## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PENNY KING,**<br>    **2055 Washington Drive**<br>    **Douglasville, Georgia 30135,**<br><br>                         **Plaintiff,**<br><br>         **v.**<br><br>**MARTIN J. GRUENBERG,**<br>    **Chairman,**<br>    **Federal Deposit Insurance Corp.,**<br>    **550 17th Street, N.W.,**<br>    **Washington, D.C. 20429,**<br><br>                         **Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   **Civil Action No. _____**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT
(Employment Discrimination)

### Introduction

1.      Plaintiff Penny King brings this action pursuant to the Title VII of the Civil Rights

Act of 1964, as amended by the Equal Employment Opportunity Act of 1972 and the Civil Right

Act of 1991, 42 U.S.C. §§ 2000e-2, *et seq.*, and 42 U.S.C. § 1981a, to redress unlawful employment

discrimination / retaliation perpetrated against her by the Federal Deposit Insurance Corporation

("FDIC"), a wholly owned corporation of the government of the United States.  Specifically,

plaintiff contends that FDIC management retaliated against her because she engaged in the protected

activity of having lodged a complaint of unlawful employment discrimination when she departed

FDIC's employ back in 2017 (Agency EEO Complaint No. FDICEO-17-020; EEOC Docket No.

410-2018-00358X) by refusing to hire her for advertised vacant positions for which she was

supremely well qualified when she applied for such positions in late 2019 and thereafter. This 2017 complaint was dismissed on summary judgment by an EEOC administrative judge on April 30, 2019, well after plaintiff had left the FDIC's employ.

## Jurisdiction

2.    This Court has jurisdiction over the subject matter of this civil action pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972 and the Civil Right Act of 1991, 42 U.S.C. § 2000e-16( c), and 42 U.S.C. § 1981a. Subject matter jurisdiction is also founded upon 28 U.S.C. § 1331, as this action arises under the laws of the United States, thereby presenting a federal question.

## Venue

3.    Venue is proper in the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1391(b) as the decisions giving rise to plaintiff's claims occurred in this judicial district; also, plaintiff's personnel records are held by the FDIC in this jurisdiction and the defendant FDIC is headquartered and conducts business in this judicial district.

## Exhaustion of Administrative Remedies

4.    All of the necessary administrative prerequisites for filing the instant civil action have been met:  plaintiff initially lodged her formal administrative EEO complaint (FDICEO-21-008), on February 16, 2021, having initially contacted an EEO Counselor at FDIC and having received a notice of right to file a formal EEO complaint on February 5, 2021. The FDIC Office of Minority and Women Inclusion ("OMWI" – FDIC's EEO office) conducted an administrative investigation with regard to plaintiff's amended formal EEO administrative complaint and issued a report of investigation ("ROI") with respect to that investigation on February 10. 2022. While plaintiff initially requested a hearing on her claims before an administrative judge employed by the

U.S. Equal Employment Opportunity Commission, she withdrew that request on October 7, 2022, asking that the complaint be sent back to the FDIC for the issuance of a final agency decision ("FAD"). On December 19, 2022, the FDIC's Office of Minority and Women Inclusion, issued a FAD with respect to plaintiff's EEO administrative complaint. This civil action is filed with the U.S. District Court for the District of Columbia within 90 days of receipt of FAD by plaintiff and her counsel.

**Parties**

5.     Plaintiff Penny King is a citizen of the United States and a resident of the State of Georgia. She is an African American women who lodged an administrative complaint of employment discrimination against the FDIC just before she left its employ back in 2017. After obtaining several years of management experience in community banking, plaintiff attempted to gain re-employment with the FDIC in community banking starting in late 2019, but has been consistently passed over in the selection process for the announced vacancies despite her high qualifications for these vacant positions. The decisions resulting in plaintiff being passed over in favor of less qualified applicants were in effect dictated by an official whose resentment toward plaintiff for her having lodged her 2017 EEO complaint, and this official was at the time of these decisions employed by the FDIC within the District of Columbia.

6.     Defendant Martin J. Gruenberg is the Chairman of the Federal Deposit Insurance Corporation, ("FDIC"), which is a government corporation within the Executive Branch of the Government of the United States that has had more than 500 employees in 20 or more calendar weeks during the past year. Its Chairman is responsible for the personnel actions, omissions and practices within FDIC and is here sued in his official capacity as head of FDIC only.

### Statement of Facts

7.      Up until 2017, plaintiff had obtained 26 years of creditable service with the FDIC, including most recently more than a few years of outstanding performance as the CG-14 Senior Community Affairs Specialist in the Atlanta Regional Office. This recent time period also included a CG-14 detail service in the FDIC Chairman's office as a Special Assistant to the Deputy Chairman, the Chief Operating Officer and the Chief of Staff, where plaintiff worked directly with the FDIC's Chairman, its Vice Chairman, and its Board of Directors, receiving a stellar performance rating for her work and having the detail extended from 120 days to a year.

8.      As the senior Community Affairs Specialist in the FDIC's Atlanta Regional Office plaintiff worked directly under the now former Regional Manager for Community Affairs until 2017, logging an excellent performance record and gaining a full understanding of the community banking environment in the Atlanta Region.

9.      In order to gain management / supervisory experience in the banking arena, plaintiff voluntarily departed from the FDIC's employ as the Senior Community Affairs Specialist in the Atlanta Regional Office in 2017 to take an opportunity as a Community Development Officer in an FDIC-supervised bank – Bank OZK. This was a management position and plaintiff held it for some three years, becoming unemployed near the end of 2020 as a result of the slow-down due to the COVID 19 pandemic. Even in laying plaintiff off , Bank OZK offered her a substantial severance package or any vacant position for which she was qualified. As the only vacant position at the bank were those of loan officer – a job for which she was not qualified – plaintiff took the severance package and departed the employ of Bank OZK effective on November 18, 2020.

10.      Just as she was leaving the FDIC's employment employ as the Senior Community Affairs Specialist in the Atlanta Regional Office in 2017, plaintiff lodged an EEO complaint

concerning her treatment by the management of the FDIC's community affairs unit - , including the lack of promotion opportunities provided to her over a number of years and she asked for a hearing on these claims by the U.S. Equal Employment Opportunity Commission (Agency EEO Complaint No. FDICEO-17-020; EEOC Docket No. 410-2018-00358X). While these 2017 EEO claims did not result in a finding of discrimination in favor of plaintiff, they engendered the resentment of management of the community affairs function at FDIC headquarter in Washington, D.C., namely Elizabeth Ortiz, FDIC's Deputy Director for Community and Consumer Affairs.

11.    Even while she was employed in a supervisory position with Bank OZK during 2019, plaintiff saw vacancy announcements for two management positions in Community Affairs at FDIC's Washington, D.C. headquarters and applied for them. While plaintiff was referred to the selecting official in each of these cases as a highly qualified applicant, she was not interviewed for either vacancy and the positions went to Emerson hall and Lekeshia Frasure respectively, with key official in the selection process being Elizabeth Ortez.

12.    Upon being laid off from her management position at Bank OZK, plaintiff applied for an advertised vacancy at the Washington, D.C.,headquarters of the FDIC. This was the position of Chief Strategic Partnership & Program Development, CM-0301-01, under Vacancy Announcement Nos. 2020-HQ-0447 and 2020-HQ-0449. Plaintiff timely applied for this vacant position in the Community and Consumer Affairs under both the status and non-status announcements on November 24 and 25, 2020, and she was fully qualified and referred (under Vacancy Announcement No. 2020-HQ-0449) to the selecting official Emerson Hall, whose supervisor was Elizabeth Ortiz, the approving official for this selection. Despite her qualifications and being referred for the position, plaintiff was not even interviewed and was passed over in favor of a male who had never been employed by the FDIC nor in community affairs.

13.     On December 20, 2019, plaintiff applied for the FDIC Regional Manager, Community Affairs in San Francisco, California, also a CM-0301-01 position advertised under Vacancy Announcement Nos. 2019-SFD-0053 and 2019-SF-0054 (Public).  While plaintiff did obtain an interview for this vacancy, she was not selected.  Plaintiff was passed over for the job in favor of a male who was never employed by the FDIC on the grounds that, unlike plaintiff, he was familiar with the San Francisco area and he had more supervisory experience than did plaintiff, being a supervisor with the Federal Reserve Bank of San Francisco at the time.  This view was expressed by Lekeshia Frasure, Section Chief in Community Affairs in FDIC's Washington, D.C. headquarters, whose second line supervisor was Elizabeth Ortiz, Deputy Director for Community and Consumer Affairs, and the approving official of this selection.

14.     On May 2, 2020, plaintiff timely applied under Vacancy Announcement No. 2020-HQD-B0174for a CG-0301-14/15 position of Senior Community Affairs Specialist – the same position which she had held with distinction in Atlanta when she was last with the FDIC– in FDIC's Washington, D.C., headquarters.   Though fully qualified for the position having held it in Atlanta previously, and referred to the selecting official, plaintiff was inexplicably passed over for this job without being given an interview.  Elizabeth Ortiz, Emerson  Hall, and Lekeshia Frasure, were all involved in the selection for this vacancy.

15.     On August 1, 2020, plaintiff applied for three separate Regional Manager Community Affairs at the FDIC, one in Atlanta, one in Chicago, and one in Kansas City, each being advertised together in Vacancy Announcement Nos. 2020-ALTD-0040 and 0041 (Public).  With regard to these three Regional manager vacancies, plaintiff was referred to the selecting officials for selection as amongst the best qualified applicants, but only made the first interviews where she was scored 18 out of 2o points by the panel.  She was passed over for each of these vacant Regional Manager

positions. With regard to the position in Chicago, another applicant who, like plaintiff, was scored 18 of 20 by the first interview panel, was selected. For the Kansas City Regional Manager job, an applicant who had received a score of 19 of 20 by the interview panel was selected, but she ended up refusing the position as she did not want to relocate from her home in Minneapolis due to the COVID-19 epidemic. Ultimately, the Regional Manager vacancy in Kansas City was re-posted (*i.e.*, re-advertised) as a temporary vacancy, but for internal FDIC employees only (that is, so that plaintiff could not apply).

16.    With regard to the Atlanta Regional Manager job vacancy, the Community and Consumer Affairs management team at FDIC headquarters in Washington, D.C. – that is Lekeshia Frasure, the Section Chief in Community Affairs, Emerson Hall, the Associate Director for Community Affairs , and their superior, Elizabeth Ortiz, the Deputy Director of Community and Consumer Affairs – decided not to select anyone for the position, claiming that despite her qualifications, prior CG-14 service as a Senior Community Affairs Specialist for the FDIC in Atlanta, and her high sore with the interview panel, they did not have confidence in plaintiff, and that none of the applicants had experience in or knowledge of the FDIC's mission or vision. Hence, like the vacancy in Kansas City, the Atlanta Community Affairs Regional Manager position was re-posted as a temporary vacancy, and thus only open to current FDIC employees (so that plaintiff could not even apply).

17.    In filling these two "temporary" vacancies, the Community and Consumer Affairs management team at FDIC headquarters in Washington, D.C. , detailed two employees into these positions, first for 120 days and then, once they had qualifying experience in the jobs, they were selected permanently for the Regional Manager positions, again off of vacancy postings open only to internal candidates. While the FDIC employee groomed and selected for the Kansas City

Regional Manager – Greg Housel – had been serving in the Kansas City office, the employee detailed to and later selected for the Atlanta Community Affairs Regional Manager job – Jessica Thurman – had never in her entire career served as a supervisor or worked in Geogia prior to being detailed into the Atlanta Community Affairs Regional Manager position. Moreover, this selectee, Ms. Thurman,  had not even served in Community Affairs at all prior to being detailed to the position, having come from an FDIC examiner position in Washington, D.C.  Moreover, neither Greg Housel not Jessica Thurman were on the certificate for the  Community Affairs Regional Manager vacancies when they were initially posted along with the Chicago vacancy in July 2020 and open to both FDIC employees and outsiders as well.  Further, since being selected as the permanent Atlanta Community Affairs Regional Manager, Jessica Thurman has been placed on a extended detail to a non-supervisory policy position in Washington, D.C.

18.    When she was not selected for any of the aforementioned advertised supervisory positions in FDIC's Community Affairs function either in the regions or at headquarters, plaintiff applied for non-supervisory Community Affairs vacancies at both headquarters and in a regional office, and she was inexplicably not selected for either position and was not accorded even an interview for these jobs. The first of these vacancies was for a CG-14/15 Senior Community Affairs Specialist (Financial Education) in Washington, D.C. , under Vacancy Announcement 2021-HQ-B0280, and plaintiff timely applied on August 7, 2021, was referred to the selecting official as a highly qualified applicant, but was not selected nor even granted an interview. The second of these vacancies was for CG-0301-13 Community Affairs Specialist in the Atlanta region – a position plaintiff held with distinction for many years – and she was non-competitively referred for selection, but was not only passed over but was not even granted an interview. The person selected was a CG-12 at the time, but had been acting in the CG-13 job for several months prior to selection.  Within

a year. She left the position and the FDIC's employment.   The Community Affairs management team was involved in both of these selection processes.

19.     On May 25, 2022, while her EEO administrative complaint of retaliation was pending, plaintiff timely applied for a CM-0301-01 Community Affairs Regional Manager vacancy in the Dallas, Texas, FDIC office (Vacancy Announcement No. 2022-DALD-0045). While plaintiff was referred for selection as a highly qualified applicant, she was not called for an interview at all. Initially, an outside candidate without any FDIC experience was selected, but that person could not pass the requisite background check. Thereafter, an inside applicant was selected who had had no supervisory experience other than a few months when she was placed in the job as "acting" prior to selection, a period during which she never wrote a performance appraisal. This person was selected off a roster and it appears that no one else was even considered for the job. Again, the Community Affairs management team was central to the decision making in the  selection process.

20.     Notwithstanding her consistently being passed over for selection – mostly without even being accorded an interview – for positions that she is highly qualified, even jobs she has held in te past with distinction, plaintiff has continued to apply for FDIC vacancies in Community Affairs. Most recently, she timely applied for another CG-0301-13 Community Affairs Specialist vacancy in Atlanta (Vacancy Announcement No. 2022-ATL-B0096), and while she was found highly qualified for this vacancy and referred non-competitively for it as she held the position previously, and though FDIC is currently interviewing candidates for this position, plaintiff was not contacted for an interview.

21.     Obviously, plaintiff continues to be shutout of all position in the Community Affairs area of FDIC – whether management or staff level – by Community Affairs management despite her recognized qualifications for such positions, and the reason behind this consistent rejection of

plaintiff as an applicant for such positions is the hostility of Community Affairs management resulting from her prior EEO activity when she was last with the FDIC in 2017. With regard to these Community Affairs Regional Manager vacancies, the recommending official, the selecting official and the approving official (the one with the final word) are located in Washington, D.C., with Elizabeth Ortiz, Deputy Director for Community and Consumer Affairs, being the ultimate authority in all these selections, even with regard to the non-supervisory positions at headquarters and in the regional offices.

### Statement of Claim

**Retaliation for Engaging in Protected EEO Activity –**

22.     As demonstrated in paragraph nos. 7 through 21 above, plaintiff has been passed over for numerous positions with FDIC's Community Affairs function, particularly though not exclusively those in Atlanta – both the Regional Manager jobs and staff positions under the Regional Manager position – as a direct consequence of her having lodged an EEO complaint back in 2017 when she was leaving FDIC's employ. That EEO complaint has been and continues to be viewed with hostility by the headquarters management of FDIC's Community Affairs function, particularly the Deputy Director of Community and Consumer Affairs, Elizabeth Ortez, who has influenced her subordinates against plaintiff in retaliation for her having earlier lodged that EEO complaint.

23.     As a direct and proximate result of this unlawful discrimination and retaliation, plaintiff has suffered and continues to suffer economic losses, lost pay and benefits, lost career benefits and lost career opportunities, lost retirement benefits, injuries in the form of personal and professional humiliation and embarrassment, as well as other emotional distress and pain and suffering.

**Prayer for Relief**

WHEREFORE, plaintiff prays that this Court enter judgment in her favor and against defendant on the claims of retaliation pursuant to the Title VII of the Civil Rights Act of 1964, as amended, and provide her with the following relief:

(a)    award plaintiff compensatory damages against defendant in the amount of $300,000.00, plus interest thereon;

(b)    order defendant to employ plaintiff to the position of Regional Manager for Community Affairs in FDIC's Atlanta Regional Office, at the CM-1 grade, retroactive to June 2020;

(c)    order defendant to provide plaintiff with annual performance ratings for 2020, 2021. 2022, and 2023 of at least "Excellent";

(d)    order defendant to provide plaintiff with full back pay and other benefits, including bonuses, in light of the ordered retroactive employment at the CM-1 level at the Excellent annual performance level for 2020 and thereafter;

(e)    order defendant to restore all annual leave and sick leave that plaintiff may have earned since being hired in June 2020, without regard to any use-or-lose provisions applicable to annual leave ;

(f)    enjoin defendant from retaliating against plaintiff for this action or for prior EEO activities;

(g)    award plaintiff the costs of bringing and maintaining this civil action and the administrative complaint that necessarily preceded it, including reasonable attorneys' fees; and

(h)    award plaintiff such other and further relief as the interests of justice may require.

## **Jury Demand**

Plaintiff hereby requests a trial by jury on all issues of fact, including the measure of damages.

Respectfully submitted,

David H. Shapiro
D.C. Bar No. 961326
SWICK & SHAPIRO, P.C.
1432 K Street, N.W.
12th Floor
Washington, DC 20005
Tel (202) 842-0300
Fax (202) 842-1418
Email - dhshapiro@swickandshapiro.com

Attorney for Plaintiff

-12-