UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PENNY KING,

       *Plaintiff*,

v.

MARTIN J. GRUENBERG,

       *Defendant*.

Civil Action No. 1:22-cv-3800 (CJN)

**MEMORANDUM OPINION**

Plaintiff Penny King, a former employee of the Federal Deposit Insurance Corporation, alleges that the FDIC retaliated against her when it declined to re-hire her several years after her voluntary departure. The FDIC moves to dismiss, which the Court grants for the reasons discussed below.

## I. Background

King is an African American woman who served as an employee at the FDIC's Atlanta branch for 26 years before her voluntary departure in 2017. Among other roles, she served as Special Assistant to the Deputy Chairman, the Chief Operating Officer, and the Chief of Staff. *See* Compl., ECF No. 1 at 4. Immediately before her departure, however, she served at the CG-14 level as the Senior Community Affairs Specialist in the FDIC's Atlanta Regional Office. *Id*. In this role, she reported to the Regional Manager for Community Affairs. *Id*.

On August 16, 2017, prior to her departure, King filed an EEO complaint "concerning her treatment by the management of the FDIC's community affairs unit." Compl., ECF No. 1 at 5; *see also* Pl. Opp. to Mot. to Dismiss, ECF No. 11 at 2. She alleged that she had been discriminated against on the basis of sex, age, and race via a "lack of promotion opportunities." *Id*. The EEOC

2

declined to issue a finding of discrimination. *Id*. King alleges in her complaint here, however, that her EEO complaint "engendered the resentment of management of the community affairs function at FDIC headquarter[s] in Washington, D.C., namely Elizabeth Ortiz, FDIC's Deputy Director for Community and Consumer Affairs." *Id*. King's complaint here does not detail any particular facts about the alleged "resentment" or why Ortiz, in particular, was the source of it. But in her opposition to Defendant's Motion, King does state that her direct supervisor, the Regional Manager of Community Affairs, told her that she would never "reach a high pay band" because "he would always rate her as a '3'— middle of the road rating." *See* Pl. Opp. to Mot. to Dismiss, ECF No. 11 at 3. In addition, King states in her opposition, Ortiz "made it clear that Ms. King's 2017 EEO Complaint was a sore point for her and stated as long as Ms. Ortiz was employed at the FDIC and over Community and Consumer Affairs, Ms. King would never be rehired at the FDIC." *Id*.

King voluntarily left the FDIC to work as a Community Development Officer at Bank OZK. *See* Compl., ECF No. 1 at 4. She served in a management role until 2020, when she was laid off "as a result of the slow-down due to the COVID 19 pandemic." *Id*. Bank OZK, however, offered her a "substantial severance package" or the opportunity to apply for "any vacant position for which she was qualified." *Id*. She took the severance and departed on November 18, 2020, because there were no vacant positions for which she was qualified. *Id*.

Beginning in 2019—about two years after she filed her EEO complaint—King applied for several roles seeking to return to the FDIC (*i.e,* she applied both while she was employed at Bank OZK and after her departure). *See* Compl., ECF No. 1 at 5. She did not receive any of the jobs at the FDIC, for various reasons. In 2019, for example, she sought two management positions in community affairs at headquarters, and although she "was referred to the selecting official" as a

3

"highly qualified applicant, she was not interviewed for either vacancy and the positions went to" other people. *Id*. She alleges that the "key official in the selection process" for those two positions was Ortiz. *Id*. She later applied on December 20, 2019 for the position of FDIC Regional Manager, Community Affairs in San Francisco, and although she was interviewed for the position, it ultimately went to a "male who was never employed by the FDIC" but "had more supervisory experience than did [King], being a supervisor with the Federal Reserve Bank of San Francisco at the time." *Id*. at 6.

In May 2020, King applied for the position of Senior Community Affairs Specialist—the same position that she held previously. *See* Compl., ECF No. 1 at 6. Ortiz was among the employees who reviewed her application, but King was not interviewed or selected.

On August 1, 2020, she applied for three regional manager positions. *See* Compl., ECF No. 1 at 6. King was identified as among "the best qualified applicants," scoring 18 out of 20 points by the selection panel. *Id*. According to King, the first (in Chicago) went to another applicant who also scored 18 out of 20. *Id*. at 7. Another (in Kansas City) originally went to a candidate who scored 19 out of 20, but who ultimately declined to relocate. *Id*. As a result, that job was re-posted as a temporary vacancy reserved to internal FDIC employees (meaning King was ineligible). *Id*. As for the third position, which was in Atlanta, the FDIC (including Ortiz) decided not to hire anyone, "claiming that despite [King's] qualifications . . . they did not have confidence in her."

The Kansas City and Atlanta positions were eventually filled by two detailed employees "for 120 days and then, once they had qualifying experience in the jobs, . . . permanently." *See* Compl., ECF No. 1 at 7. The person who filled the Kansas City role had worked in that office before. *Id*. at 8. But in Atlanta, the selectee had "never . . . served as a supervisor or worked in

4

Georgia prior to being detailed into the Atlanta Community Affairs Regional Manager position," *id.*, nor had she served in community affairs. *Id.*

Later that fall, King applied for the position of Chief of the Strategic Partnership and Program Development in the FDIC's Community and Consumer Affairs Division. *See* Compl., ECF No. 1 at 5. Although her application was referred to the selecting official (who was supervised by Ortiz), King was not interviewed; the position went to a "male who had never been employed by the FDIC nor in community affairs." *Id.* On August 7, 2021, she applied for "non-supervisory Community Affairs vacancies at both headquarters and in a regional office," neither of which she was interviewed or selected for. *Id.* at 8. And in May 2022 she applied for a regional manager position in Dallas. She was referred for possible selection as a highly qualified candidate but did not receive an interview, and (King claims) the position went to a candidate who could not pass a background check and then a separate, internal employee with little supervisory experience. *Id.*

On February 16, 2021, King filed a EEO complaint against the FDIC relating to some of these hiring decisions. *See* Pl. Opp. to Mot. to Dismiss, ECF No. 11 at 8. King did not attach a copy of that complaint (or any right to sue letter) to her complaint here. But according to her briefs, she pointed to six instances in which the FDIC's failure to rehire her allegedly constituted retaliation for her 2017 EEO complaint: the decisions regarding the San Francisco Regional Manager position, the Regional Manager positions in Kansas City, Chicago, and Atlanta, the Chief, Strategic Partnerships and Program Development position, and the Community Affairs Specialist position. *Id.* King's papers do not indicate when or whether she received a right to sue letter from the EEOC for these six decisions.

5

On December 22, 2022, King filed this suit *pro se*, claiming that the FDIC retaliated against her by not rehiring her because of her 2017 EEO complaint. The FDIC moved to dismiss or, in the alternative, for summary judgment, arguing that King had failed to exhaust some of her claims and had not plausibly alleged a causal connection between her EEO complaint and its various decisions not to hire her. *See* Mot. to Dis., ECF No. 9-1 at 11–12.

In her opposition to the FDIC's Motion, King (now represented by counsel) included facts that she admits "were not fully described in the Complaint." *See* Pl. Opp. to Mot. to Dismiss, ECF No. 11 at 2, n.1. She claims that she "exhausted her administrative remedies by filing formal complaints that were investigated by the [FDIC]." *Id*. She adds that while her complaint "did not detail facts about [her] EEOC litigation," those facts are "included in the administrative records." *Id*. at 4, n.2. And she claims that "the FDIC should have issued a Final Agency Decision (FAD) within 40 days" of the EEOC's 2019 dismissal of her EEO complaint. *Id*. at 3–4. She asks for permission to "include those facts in an Amended Complaint." *Id*.

## II.     Legal Standard

A complaint must, of course, "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Accordingly, complaints containing only "[t]hreadbare recitals of the elements of a cause of action" and "mere conclusory statements" must be dismissed. *Id*. Additionally, at the Rule 12(b)(6) stage, the Court will only consider facts alleged in the complaint—not in briefs. *See Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994) ("The purpose of a motion to dismiss is to assess the validity of the *pleadings*.") (emphasis in original); *Singh v. District of Columbia*, 55 F. Supp. 3d 55, 70 (D.D.C. 2014) ("It is axiomatic that a party may not amend his complaint through an opposition brief.") (internal quotations omitted).

### III.     Analysis

**1.     King Only Exhausted Claims Relating to Six Employment Decisions**

Before a plaintiff can pursue a Title VII claim in court, she must exhaust all administrative remedies.  *See Oviedo v. WMATA*, 948 F.3d 386, 393 (D.C. Cir. 2020) (internal quotations omitted).  Exhaustion requires a plaintiff both to make a timely complaint to the EEOC and to describe in sufficient detail the basis for her complaint.  *See Washington v. WMATA*, 160 F.3d 750, 752 (D.C. Cir. 1998).

King concedes that her 2021 EEO complaint only complained about the FDIC's decision not to hire her for six of the positions to which she applied.  King has therefore failed to exhaust her claims as to the other instances of alleged non-hiring, and any claims as to those incidents are dismissed.

**2.     King Has Failed to State a Claim of Retaliation**

To state a cognizable claim of retaliation under Title VII, a plaintiff must allege that:  (1) she engaged in protected activity under Title VII; (2) she suffered an adverse employment action from her employer; and (3) there is a causal connection between the two.  *See Iyoha v. Arch. of the Capitol*, 927 F.3d 561, 574 (D.C. Cir. 2019) (quoting *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009).  It is well-settled that Title VII retaliation claims are governed by traditional causation principles.  *See Univ. Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).  At this stage, then, King must plausibly allege "that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id*.  It is possible to demonstrate such a causal connection "by showing that the employer had knowledge of the employee's protected activity, and that the [retaliatory] personnel action took place shortly after that activity." *Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000) (quoting *Mitchell v. Baldridge*, 759 F.2d 80, 86 (D.C. Cir. 1985)); *see also Jones v. D.C. Water & Sewer Auth.*, 922 F. Supp. 2d 37, 42 (D.D.C. 2013)

7

("[T]his Circuit has generally found that a two- or three-month gap between the protected activity and the adverse employment action does not establish the temporal proximity needed to prove causation.").

But King has not plausibly alleged that causal connection here. More than 28 months had transpired between the filing of King's EEO complaint (on August 16, 2017) and the first employment decision relevant here (the December 20, 2019 hiring of someone else as San Francisco Regional Manager). *See Holbrook v. Reno*, 196 F.3d 255, 263 (D.C. Cir. 1999) (holding that to show causation, the plaintiff must usually show "that the adverse personnel action took place shortly after that activity") (internal quotation marks omitted). King had also voluntarily departed the FDIC before that decision. That long period, together with her voluntary decision to work elsewhere, may not be dispositive at the pleading stage, but King has to allege more to link her EEO complaint with the FDIC's employment decision.

In particular, given that temporal gap and decision to leave, King was required to plead specific facts plausibly linking the FDIC's decisions not to rehire her to her prior EEO complaint. She has not done so. Instead, in each case she has alleged facts that make it likely that her rejections were based on the substance of her applications, rather than as retaliation for her having filed an EEO complaint.

Take the San Francisco Regional Manager position. King does not allege any specific facts linking the FDIC's decision to her EEO complaint. Instead, she acknowledges that the candidate who ultimately received the job for the FDIC Regional Manager position in San Francisco "had more supervisory experience than" she did and had served as "a supervisor with the Federal Reserve Bank of San Francisco." Compl., ECF No. 1 at 6. If anything, under King's own description of events, her application likely was not denied because of her EEO complaint, but

8

rather because there was a better qualified candidate who was from the region of interest. To be sure, King states in her opposition brief that Ortiz had "made it clear that Ms. King's 2017 EEO Complaint was a sore point for her and stated as long as Ms. Ortiz was employed at the FDIC and over Community and Consumer Affairs, Ms. King would never be rehired at the FDIC." *See* Pl. Opp. to Mot. to Dismiss, ECF No. 11 at 3. But that allegation appears nowhere in her complaint. *Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994) ("The purpose of a motion to dismiss is to assess the validity of the *pleadings*.") (emphasis in original); *Singh v. District of Columbia*, 55 F. Supp. 3d 55, 70 (D.D.C. 2014) ("It is axiomatic that a party may not amend his complaint through an opposition brief.") (internal quotations omitted).

The same problem applies to each of the FDIC's other decisions. King fails to allege any facts drawing a causal connection between the EEO complaint and the FDIC's decision not to hire her as the Regional Manager in Chicago. Instead, she acknowledges that that position was given to an applicant who also received an 18 out of 20 from her interview panel. *See* Compl., ECF No. 1 at 7. She doesn't allege a causal connection between the 2017 EEO complaint and the Regional Manager decisions in Kansas City and Atlanta—which were made well over three years after her EEO complaint. Moreover, the employee hired for the Kansas City position lived in Kansas City and was already working in that office. *Id*. And as for Atlanta position, Plaintiff alleges that she was not selected because the management team "did not have confidence in" her, *id*. at 7, and the candidate who was ultimately selected had worked previously as an FDIC examiner. *Id*. at 8. Similar problems exist with the decisions (made even later in time) regarding the positions of Chief, Strategic Partnership and Program Development Officer, and the Community Affairs Specialist position in Atlanta. *See* Compl., ECF No. 1 at 8.

\* \* \*

For the foregoing reasons, the Court grants Defendant's Motion to Dismiss, ECF No. 9. An order accompanies this opinion.

DATE:  March 31, 2024

_____
CARL J. NICHOLS
United States District Judge